UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


TOM BARNETT                                             CIVIL ACTION

VERSUS
                                                       NO. 17-00333-JWD-RLB
MAGELLAN HEALTH INC.,
previously known as MAGELLAN
HEALTH SERVICES, INC.
Also known as MAGELLAN of
LOUISIANA and/or
MAGELLAN IN LOUISIANA


<u>**RULING**</u>

Before the Court is a *Motion to Dismiss* ("Motion") filed by Magellan Health, Inc.

("Magellan" or "Defendant").[1]  Plaintiff Tom Barnett ("Plaintiff" or "Barnett") has filed an

*Opposition to Defendant's Motion to Dismiss* ("Opposition") to which the Defendant has

filed a *Reply.*[2]  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332.  Oral argument

is unnecessary.  For the following reasons, the Motion is **GRANTED IN PART** and

**DENIED IN PART**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The facts taken in the light most favorable to Plaintiff are as follows.  On April 24,

2017, Plaintiff filed suit in the Nineteenth Judicial District Court against the Defendant

asserting state law claims of breach of fiduciary duty, intentional and negligent

misrepresentation, negligence/fault, and detrimental reliance.   On May 26, 2017,

Magellan timely removed the action to this Court.  On June 2, 2017, Magellan filed a

Motion to Dismiss Plaintiff's suit, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[1] Doc. 23.
[2] Doc. 32 and Doc. 33.

Procedure.[3]   On October 2, 2017, this Court dismissed all but Plaintiff's detrimental reliance claim, but allowed Plaintiff to amend his *Original Complaint* to remedy the deficiencies related to his breach of fiduciary duty claim.[4]

Plaintiff filed a *First Supplemental and Amending Complaint* ("AC") on November 27, 2017.[5]   In his AC, Plaintiff not only amended his breach of fiduciary duty claim, but also amended his detrimental reliance claim.[6]   Plaintiff also brought for the first time claims of breach of contract and breach of mandate.[7]   In his AC, Plaintiff alleges that in or about November 2011, Magellan entered into a contract with the Louisiana Department of Health and Hospitals ("DHH")[8] to serve as the Statewide Management Organization ("SMO") for behavioral health services offered by the DHH.[9]   In May 2012, Plaintiff applied online for a job with Magellan.[10]   Barnett further contends that the online application of employment did not "include any questions regarding or way to disclose" that his spouse was employed by DHH's Office of Behavioral Health ("DHH-OBH").[11]

According to Plaintiff, on June 4, 2012, he had an initial telephone interview with Magellan Human Resources Representative Terri Holub, in which he disclosed that his wife was an employee with DHH-OBH.[12]   Barnett claims that he was assured that his wife's employment with DHH-OHB did not present a conflict of interest for Magellan to hire him.[13]   Plaintiff interviewed with Magellan for the second time on June 22, 2013.

---

[3] Doc. 2.
[4] Doc. 17 at 13.
[5] Doc. 21.
[6] *Id.*
[7] *Id.*
[8] The Department has been renamed the Louisiana Department of Health (LDH).
[9] Doc. 21 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 4.

Plaintiff alleges that shortly after his initial telephone interview, he disclosed his wife's employment for a second time during a telephone interview with Magellan representative Brian Smock ("Smock").  Barnett contends that after he assured Smock that his wife did not work on the Request for Proposal ("RFP") of the contract or on the selection or scoring committee that selected Magellan to be the SMO, Smock advised him that his wife's employment would not prevent him from being employed by Magellan nor would it pose any problems.[14]

Plaintiff alleges that he disclosed his wife's employment by DHH-OBH to Smock again around June 22, 2012 during an in person meeting.[15]  Barnett claims that he was once again assured by Smock that this would not present an issue with his employment with Magellan.[16]  Barnett alleges that he additionally disclosed his wife's employment in writing as part of the pre-employment screening process.[17]

Plaintiff was subsequently hired and began his employment with Magellan on July 16, 2012.[18]  Barnett claims that once he began working for Magellan, he disclosed his wife's employment with DHH to nine Magellan supervisory employees.[19]  Plaintiff alleges that each of these individuals assured him that he was not subject to any ethics rules or reporting requirements because of his wife's employment with DHH.[20]

Barnett claims that despite the aforementioned disclosures to Magellan, in April 2014, he and his wife were charged with ethical violations by the Louisiana Board of Ethics, because Barnett had been hired by Magellan at the time that it was acting as the

---

[14] *Id.* at 4-5.
[15] *Id.* at 5.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 5-6.
[20] *Id.* at 6.

SMO for DHH—which concurrently employed Plaintiff's wife.[21]  According to Barnett, after he received notice of the charges, he spoke with JoeAnn Coleman ("Coleman"), who served as Magellan's Corporate Compliance Administrator for Louisiana, and she assured Barnett that she had seen the written document wherein he disclosed his wife's employment two years earlier.[22]  Plaintiff claims that he subsequently requested this document but was told that it was a proprietary business document between Magellan and the state of Louisiana, and was denied access to the document.[23]

Plaintiff alleges that because Defendant failed to provide the requested document, he was unable to properly defend himself during the investigation.[24]  Barnett asserts that because of Magellan's alleged actions, he was forced to confront "ethics charges that were made very public in multiple media outlets" from across the nation.[25]  Barnett further alleges that this attention has damaged both his and his wife's reputations to the point that they "will never be able to clear their names and reputations of scandal—names and reputations they spent a lifetime protecting."[26]

Plaintiff alleges several violations by Magellan arising under the terms of the RFP for its contract with DHH, language from its website, and excerpts from its "Compliance Handbook."[27]  According to Plaintiff's AC, the contract RFP obligated Magellan to disclose that it had hired Barnett and that his wife was employed by the state, and the Defendant failed to do so.[28]  Plaintiff specifically references the following two sections from the RFP:

---

[21] *Id.*
[22] *Id.* at 6-7.
[23] *Id.* at 7-8.
[24] Id. at 9.
[25] Id. at 13.
[26] Id. at 14.
[27] *Id.* at 8-12.
[28] *Id.* at 8.

> Proposers are responsible for determining that there will be no conflict or violation of the Ethics Code if their company is awarded the contract;[29] [and]
>
> Warranty of Removal of Conflict of Interest: The contractor shall warrant that it, its officers, and employees have no interest and shall not acquire any interest, direct or indirect, which conflicts in any manner or degree with the performance of service hereunder. The Contractor shall disclose any dual relationships that pose any evident or potential conflicts of interest. The contractor shall periodically inquire of its officers, and employees concerning such conflicts, and shall inform DHH-OBH promptly of any potential conflict.[30]

Barnett further contends that the RFP obligated Magellan to disclose to him that his employment (1) violated Louisiana state ethics laws and/or regulations, and potentially violated state ethics laws, (2) subjected him to reporting requirements, and (3) subjected him and his wife to investigation by the Board of Ethics.[31]

Plaintiff also asserts that the following language from Magellan's website created certain duties owed by Defendant to Plaintiff:

> Under the scrutiny of Magellan's Executive Leadership, we are responsible for developing, implementing, and managing Magellan's corporate compliance program. We define the scope of appropriate business and clinical practices as they relate to applicable state and federal laws. Magellan's corporate Compliance Department is responsible for the company's awareness of applicable state and federal laws and regulations that impact the company.[32]

Barnett contends that the above language created a duty on the part of Magellan to disclose to Plaintiff that (1) it communicated with the Louisiana Board of Ethics about him, (2) that Barnett disclosed his wife's employment with the State, and (3) its employment of Plaintiff potentially violated state laws and regulations.[33] Barnett maintains that Magellan

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at 9.
[32] *Id.* at 9-10. Defendant does not provide any date or citation for the language that he references as purportedly being listed on Magellan's Compliance website.
[33] *Id.* at 10.

admitted fault for failing to disclose any of the required information years after the alleged breach during the ethics investigation.[34]

Finally, with regard to his breach of fiduciary duty claim, Plaintiff alleges that Magellan created a duty owed to him by adopting and putting into effect a Corporate Compliance Handbook ("Handbook"), which he claims applied to all Magellan employees and detailed several responsibilities that Magellan voluntarily undertook.[35]   Specifically, Barnett claims that in the Handbook, Magellan offered to undertake the duty to ensure that its employees were aware of, understood, and were in compliance with federal and state laws related to their jobs.[36]   Barnett alleges that Magellan breached its duty by (1) failing to determine the Louisiana laws relevant to Plaintiff's job title; (2) failing to advise Plaintiff that it could not hire him; (3) failing to disclose the potential conflict despite the requirements of the State RFP/contract; (4) making a representation that it would be responsible for knowing all the federal and state laws applicable to Magellan's business and ensuring employees compliance with these law; and (5) failing to advise Plaintiff that his employment with Magellan could be prohibited by law, could constitute ethics violations, or could subject him to reporting requirements.[37]

## II.   DISCUSSION

### A.  Rule 12(b)(6) Legal Standard

In *Johnson v. City of Shelby, Miss.*, the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader

---

[34] *Id.*
[35] *Id.* at 11.
[36] *Id.*
[37] *Id.* at 12-13.

is entitled to relief;' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.[38]

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."[39]

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled.  Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]  This analysis is not substantially different from that set forth in Lormand, supra, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim.  The standard, under the specific language of Federal Rule of Civil Procedure 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based.  The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "the discovery will reveal relevant evidence of each element of the claim.[41]

More recently, in *Thompson v. City of Waco, Tex.*, the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

---

[38] *Johnson*, 135 S. Ct. 346, 346-47, 190 L. Ed. 2d 309 (2014) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

[39] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

[40] *Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

[41] *Id.* (quoting *Lormand*, 565 F.3d at 257) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff…To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Our task, the, is to determine whether the plaintiff states a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.[42]

### B. Parties' Arguments

Magellan argues that each of the claims asserted by Barnett in his AC, should be dismissed because they each fail to state a plausible claim of relief.[43]  Specifically, with regard to the breach of fiduciary duty claim, Magellan asserts that Plaintiff fails to allege any facts that would allow a reasonable inference that Magellan agreed to act primarily for Barnett's benefit, which is an essential element needed to successfully assert such a claim.  Magellan argues that the language contained in the RFP that Barnett references merely required it to do the following: (1) ensure the absence of any conflicts of interest or Ethics Code violations should it be awarded the contract; (2) warrant that its officers and employees have no interests that conflicts with the performance of services under the contract; and (3) disclose any dual relationship that poses an evident or potential conflict of interest.  Magellan contends that it is unreasonable to infer that by responding to the RFP, Magellan agreed to act primarily for Barnett's interest, especially since he was not employed with Magellan at that time.

Magellan also disputes Barnett's contention that the language from Magellan's compliance website created a fiduciary duty owed by Defendant to Plaintiff.  Magellan argues that the language cited by Barnett simply confirms that the Compliance

---

[42] *Thompson*, 764 F.3d 500, 502-503 (5th Cir. 2014) (citations and internal quotations omitted).
[43] Doc. 23 at 1.

department "works primarily for the benefit of Magellan by ensuring that the company is aware of the laws that impact the company and its business practices."[44]   Magellan argues that it is unreasonable to infer that Magellan was agreeing to act primarily for the benefit of Barnett based on his referenced language from the compliance website.

Magellan also disputes whether Barnett's reference to Defendant's Handbook—which was not included in Plaintiff's Original Complaint—created a fiduciary duty owed by Magellan to Barnett.   Defendant argues that Barnett's allegation is unsupported and conclusory since Barnett did not attach the handbook to his AC nor does he point to any specific language contained within the handbook that he believes created a duty on the part of Magellan to act primarily for his benefit.   Moreover, Magellan attaches and specifically references the following excerpts from the Handbook:[45]

> Magellan's Corporate Compliance Program…is designed to help employees be aware of, understand and follow federal and state laws related to their jobs…Magellan's Corporate Compliance Department is responsible for the Company's awareness of applicable state and federal laws and regulations;[46]

> [A]ll Magellan employees are required to:...comply with all applicable laws and Magellan's policies, including, but not limited to, those addressing employees' health, safety, and welfare in the workplace;…comply with applicable state and federal law and cooperate with any reasonable demands made in the course of a government investigation…;[47] and

> As an employee of Magellan…You must know and comply with applicable laws….Claims of ignorance, good intentions, or use of poor judgment are not acceptable.  Maintaining ethical standards is everyone's responsibility.[48]

---

[44] Doc. 23-1 at 10.

[45] The Court may consider all documents referenced in the Amended Complaint when adjudicating a Rule 12 Motion to Dismiss.  Citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1985) ("[C]ourts must normally limit their inquiry to the facts stated in the complaint and the documents either attached or incorporated in the complaint.").

[46] Doc. 23-1 at 10; Doc. 23-2 at 2.

[47] Doc. 23-1 at 11; Doc. 23-2 at 2-3.

[48] *Id.*; Doc. 23-2 at 3.

Magellan asserts that the cited excerpts from the Handbook demonstrate that it did not act primarily for the benefit of Barnett when it issued its Compliance policies.[49]

Additionally, Magellan contends that Barnett fails to allege any facts sufficient to show that Defendant committed fraud, breached some trust, or took some action outside the limits of the alleged fiduciary relationship, as necessary to successfully state such a claim.[50]  Instead, Magellan maintain that all Barnett alleged was that Defendant promised to ensure he complied with all federal and state laws and regulations relating to his job and did not do so.[51]  Magellan argues that "the Amended Complaint does not contain facts suggesting that Magellan promised to make Plaintiff aware of and comply with all laws applicable to and obligations he may have stemming from his employment with Magellan."[52]  Magellan contends that to allege that it obligated itself to make employees aware of all laws relating to its employment (including the state ethical rules requiring Plaintiff to file reports disclosing his salary from Magellan) is "akin to arguing that Defendant promised to research and ensure Plaintiff was aware of and complied with all of the laws governing individual reporting of wages and tax forms."[53]

Finally, with regard to the breach of fiduciary duty claim, Magellan argues that Barnett fails to allege with specificity how Defendant breached the fiduciary duty.[54] Magellan claims that the conclusory allegations are inadequate to support a breach of fiduciary duty claim and should be dismissed, especially since this is the Plaintiff's second attempt at asserting plausible claim.[55]

---

[49] Doc. 23-1 at 11.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 12.
[53] *Id.* at *fn.* 6.
[54] *Id.* at 12.
[55] *Id.*

Defendant also maintains that Plaintiff's claims for breach of contract and breach of mandate should likewise be dismissed for two reasons.  First, Defendant contends that these new causes of action are improperly asserted because the deadline for asserting new claims has long passed and the Court's previous ruling did not authorize the assertion of any new claims.[56]  Second, Magellan argues that Barnett fails to plead any facts sufficient to support either claim.  Specifically, with regard to the breach of contract claim, Magellan argues that Plaintiff's bare-bones allegations merely recite the elements of such a claim, and do not identify any specific contract or obligation relating to his employment that Defendant allegedly breached.[57]  With regard to Barnett's breach of mandate claim, Magellan argues that Plaintiff failed to plead the existence of a contract in which he authorized Magellan to transact affairs on his behalf, as required to successfully assert such a claim.[58]

Finally, with regard to Barnett's detrimental reliance claim, Magellan asserts that the new factual allegations made in Plaintiff's AC show that he fails to establish the required elements necessary to support such a claim.  Specifically, Magellan argues that the ethics charge filed against Barnett was not because of any alleged breach by Magellan, but only because Barnett failed to disclose to the State of Louisiana that he was earning money from Magellan, which was an entity that contracted with his wife's employer.[59]  In support of its argument, Magellan attaches excerpts from the minutes of

---

[56] *Id.* at 12, 14.
[57] *Id.* at 13.
[58] *Id.* at 15.
[59] *Id.* at 17.

the Board of Ethics hearing where the Chairman of the Board explained why the ethics charge was filed.[60]

Magellan argues that because Barnett does not allege in his AC that Defendant told him that he did not need to file the required financial disclosures, it follows that Barnett could not have relied to his detriment on any representations by Magellan when he failed to file the required disclosure.[61]  Additionally, Magellan contends that the ethics charge did not indicate that Barnett's employment with Magellan created the conflict of interest.[62]  Magellan points out that Barnett kept his job with Magellan long after the ethics proceedings were initiated.[63]  Accordingly, Magellan argues, Barnett's position was not changed because of his reliance on any of the alleged representations he claims Magellan made to him about any possible conflict of interest with his wife's employment with DHH-OBH.[64]  Instead, Magellan asserts, the ethics charge was filed against Barnett because Barnett violated the law.[65]

In his Opposition, Plaintiff maintains that he has alleged facts sufficient to support a claim of breach of fiduciary duty.  Defendant argues that Magellan voluntarily assumed this duty through the language on its Corporate Compliance website and through its Handbook.[66]  Barnett contends that, in furtherance of its voluntary assumption of this duty, Magellan repeatedly questioned him regarding his wife's employment while also repeatedly advising him that such employment would not violate any Louisiana law.[67]

---

[60] *Id.* at 17-18.
[61] *Id.* at 19.
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] Doc. 32 at 5.
[67] *Id.*

Barnett asserts that he properly placed confidence in Magellan that it would provide him with accurate information regarding his eligibility for employment based on its assumption of these duties.[68]   Barnett also argues that he reasonably believed that Magellan had complied with these duties by virtue of its decision to hire him and the representations it made to him.[69]   Accordingly, Barnett contends that he has pled all elements of a breach of fiduciary duty claim and that Defendant's Motion should be denied.[70]

With regard to his breach of contract and breach of mandate claims, Barnett disputes that these new causes of action are untimely because they arise out of the same factual allegations as set forth in the Original Petition.[71]   Barnett argues that because a breach of contract claim has a ten (10) year prescriptive period and he can still assert this claim in a separate action, allowing this claim to be included would allow for complete resolution of all claims between the two parties.[72]   Additionally, Barnett argues that he has stated a viable claim for breach of contract because he has alleged: (1) that Magellan offered to ensure that its employees were aware of and followed federal and state laws related to their jobs, creating an obligation to perform, and (2) Magellan breached this obligation when he was charged with and had to pay fines for violating state ethics laws.[73]

Specifically regarding his breach of mandate claim, Barnett argues that Magellan's duty arose when he accepted their offer of employment.  Barnett states that by doing so, he "conferred on Defendant the authority to ensure that his employment complied with all

---

[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.* at 6.
[72] *Id.*
[73] *Id.*

Louisiana laws."[74]    Barnett claims that Magellan breached this mandate when ethic charges were filed against him and his wife solely because Magellan employed Barnett.[75]

Finally, Barnett argues that nothing has changed with regard to his detrimental reliance claim.[76]    Barnett argues that this Court's previous ruling properly denied Defendant's attempts to dismiss his claim, and that since there have been no changes in the facts asserted with regard to this claim, the Court's previous denial should remain.[77] Barnett also argues that the Defendant's failure to seek reconsideration of the Court's previous denial is further support that this cause of action was properly asserted.[78]

### C. Analysis

### 1. Breach of Fiduciary Duty Claim

As stated in the Court's previous ruling, in order to establish a breach of fiduciary duty claim in Louisiana, a plaintiff must allege "(1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach."[79]    According to the Louisiana Supreme Court, the defining characteristic of a fiduciary relationship is "the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor."[80]  While Louisiana law provides that, in limited circumstances, an employee may owe a fiduciary duty to his

---

[74] *Id.*

[75] *Id.*

[76] *Id.* at 7.

[77] *Id.*

[78] *Id.*

[79] *Brockman v. Salt Lake Farm P'ship*, 768 So.2d 836, 844 (La. App. 2 Cir. 2000) (citing *Oliver v. Cent. Bank*, 658 So.2d 1316, 1324 (La. App. 2 Cir. 1995)).

[80] *Scheffler v. Adams and Reese, LLP*. 950 So.2d 641, 648 (La. 2007) (citing *Plaquemines Parish Commission Council*, 502 So.2d 1034, 1040 (La. 1987); *State v. Hagerty*, 205 So.2d 369, 374-375 (La. 1967)).

employer, there is no general fiduciary duty owed by employers to employees recognized in Louisiana.[81]

In its previous ruling, this Court found that Magellan did not owe Barnett a fiduciary duty by virtue of the parties' employment relationship.[82]  The Court further found that none of the quoted language referenced by Plaintiff in his Petition (the RFP contract language nor the excerpts from Magellan's Corporate Compliance website) imposed a duty on Magellan to its employees.[83]  Instead of dismissing his breach of fiduciary claim, however, the Court allowed Barnett an opportunity to file an AC solely to remedy the deficiencies related to his breach of fiduciary duty claim.[84]

Turning to Plaintiff's AC, Barnett alleges that Magellan undertook a fiduciary duty by offering to ensure that he and all other Magellan employees were aware of and complied with Louisiana law.[85]  Specifically, Barnett alleges that in addition to agreeing to ensure that all of its employees complied with federal and state laws vis-a-vie the language contained in the RFP with the state as well as statements referenced on its Corporate Compliance website, Magellan also undertook a fiduciary duty through its Corporate Compliance Program as reflected in its Handbook.[86]  Although Plaintiff does not attach or cite to any specific provision contained within the Handbook, Magellan does

---

[81] *Hardesty v. Waterworks Dist.* No. 4, 954 F.Supp.2d 461, 474 (W.D. La. June 21, 2013) (internal citations omitted) ("[T]his court can find no precedent imposing a general fiduciary duty owed by employers to employees, nor has the plaintiff pointed to any such cases."); *see also Safford v. Painewebber, Inc.*, 730 F.Supp. 15, 18 (E.D. La. Feb. 8, 1990) ("Defendant argues that there is no support in the law for a fiduciary duty owed by an employer to an employee.  The Court agrees.").
[82] Doc. 17 at 13.
[83] *Id.*
[84] *Id.*
[85] Doc. 21 at 11; Doc. 32 at 5.
[86] *Id.*

not dispute the existence of the Handbook, and has even attached the following statement contained within the Handbook:

> Magellan's Corporate Compliance Program…is designed to help employees be aware of, understand and follow federal and state laws related to their jobs…Magellan's Corporate Compliance Department is responsible for the Company's awareness of applicable state and federal laws and regulations.[87]

Accepting all of the allegations in Barnett's AC as true, and applying the legal principles set forth above, the Court finds that Barnett has alleged facts sufficient to state a cause of action for breach of fiduciary duty.  As the Louisiana Supreme Court has held, "[g]enerally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties."[88]  The court further stated that "[a]s a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties."[89]  A fiduciary relationship between the parties exists, the court further held, "'when confidence is reposed on one side and there is resulting superiority and influence on the other.'"[90]  "The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor."[91]

A review of Barnett's AC reveals the existence of facts that reasonably establish that Magellan undertook a fiduciary relationship between itself and its employees (including Barnett).  The AC clearly avers that Barnett was concerned enough about any

---

[87] Doc. 23-1 at 10; Doc. 23-2 at 2.
[88] *Scheffler*, 950 So.2d at 647.
[89] *Id.*
[90] *Id.* (quoting *Plaquemines Parish Commission Council v. Delta Development Company, Inc.*, 502 So.2d 1034, 1040 (La.1987), quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)).
[91] *Id.* at 648.

potential conflicts with his wife's employment that he felt compelled to disclose it on at least twelve occasions to eleven different employees.[92]  Barnett alleges that with each disclosure, he was assured that his wife's employment with DHH-OBH posed no problems, or that he would be subject to any ethics rules or reporting requirements.[93]  Moreover, the language quoted in the Handbook, is further evidence that can reasonably be interpreted that Magellan's Corporate Compliance Program was designed to ensure the type of confidence or trust described by the Louisiana Supreme Court.  While Magellan argues that the excerpt from the Handbook was geared toward safeguarding the good of the overall company and not for the benefit of Barnett or any specific employee, the Court does not draw such a distinction, especially since it specifically references that the Compliance Program is "designed to help **employees** be aware of, understand and follow federal and state laws related to their jobs…."[94]

These factual allegations, along with the Plaintiff's references to the excerpts from the website, are sufficient enough to allow this Court to find that it is plausible that a fiduciary relationship existed between the parties.  Accordingly, the Court shall **DENY** Defendant's Motion to dismiss Plaintiff's breach of fiduciary duty claim.

### 2.  Breach of Contract and Breach of Mandate Claims

In his AC, Plaintiff asserts two causes of action for the first time, breach of contract and breach of mandate, against Magellan.  Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleadings only with the opposing party's written

---

[92] Doc. 21 at 4-6.
[93] *Id.* at 6.
[94] Doc. 23-1 at 6 (emphasis added).

consent or the court's leave" after the time has passed for amending as a matter of course.[95]

The Court's August 1, 2017 Scheduling Order fixed the deadline for amended pleadings in this case for October 16, 2017.[96]  In the Court's ruling on November 6, 2017, Plaintiff was granted twenty-one (21) days from the date of the ruling "to file an amended complaint **as to Plaintiff's breach of fiduciary claim only**."[97]  The Court's ruling did not grant Plaintiff leave to file his AC with additional new causes of action.   Additionally, because the deadline to amend pleadings had already passed when the Plaintiff filed his AC on November, 27, 2017, the Court finds that Plaintiff's breach of contract and breach of mandate claims are not properly before the Court.  Accordingly, the Court shall **GRANT** Defendant's Motion and Plaintiff's breach of contract and breach of mandate claims are hereby dismissed.

### 3. Detrimental Reliance Claim

As stated in the Court's previous ruling, in order to prevail on a detrimental reliance claim in Louisiana, a plaintiff need not establish a formal, valid, and enforceable contract, but only prove by a preponderance of the evidence the following three elements: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.[98]   In its ruling, the Court found that Plaintiff alleges sufficient facts to establish each one of the elements necessary to plausibly state a claim for detrimental reliance against Magellan.[99]

---

[95] Fed. R. Civ. P. 15(a)(2).
[96] Doc. 14 at 1.
[97] Doc. 17 at 16 (emphasis added).
[98] Doc. 17 at 14 (quoting *E. Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC* 5 So.3d 238, 246 (La.App. 1 Cir. 2008) (citing *Suire v. Lafayette City-Parish Consolidated Gov.*, 907 So.2d 37, 59 (La.2005)).
[99] *Id.* at 14-15.

In its Motion, Magellan attempts to seek reconsideration of the Court's previous denial of its Motion to Dismiss Plaintiff's detrimental reliance claim, arguing that because Plaintiff incorporated new factual allegations in his AC, he amended his detrimental reliance claim and reconsideration was warranted.   Magellan then restates the same arguments previously rejected by this Court.

The only new argument that Magellan makes is regarding its disagreement with the Court's previous determination that Plaintiff alleged sufficient facts to establish "a change in position to Plaintiff's detriment," which is the third element of a detrimental reliance claim.  Magellan argues that the ethics charge filed against Barnett was not due to his reliance on any assurances that Magellan made to him concerning the lawfulness of his employment, but rather because he failed to disclose to the State of Louisiana that he was earning money from Defendant.[100]  Magellan cites to publicly available minutes from the Defendant's hearing before the state's Board of Ethics in support of its argument. Magellan claims that Plaintiff has not alleged anywhere in his AC, that Defendant told Plaintiff that he need not file financial disclosures required due to the nature of Plaintiff's wife's employment.[101]  Therefore, according to Magellan, Plaintiff could not have relied to his detriment on any representations by Magellan when he failed to file the requisite disclosures.[102]

The Court finds that the facts incorporated into the Plaintiff's AC do not alter or undermine the facts that have been previously held to support a sufficient finding of each element of Barnett's detrimental reliance claim.   The Court's finding that Barnett

---

[100] Doc. 23-1 at 17.
[101] Doc. 33 at 5.
[102] *Id.*

sufficiently plead facts to support the first and second elements has not been disputed by Magellan.[103]  With regard to the third element of his detrimental reliance claim, Barnett need only establish "a change in position to one's detriment because of the reliance."

The Court has previously found that Barnett's claim that "ethics charges were filed against him, the charges were published in articles on several media outlets, these articles were and still are found on the Internet, and he (and his wife) 'will never be able to clear their names and reputations of scandal,'" were sufficient to allow the Court to draw the reasonable inference that the third element was met.[104]  Defendant's argument that it was not the cause of Barnett's ethics charges, as well as Defendant's reference to the minutes from the BOE hearing, do not change, alter, or discount any of the allegations cited above which the Court found sufficient to establish the third element of Barnett's detrimental reliance claim.  Therefore, the Court finds that the facts alleged in Plaintiff's AC do not change the Court's previous finding that Barnett has alleged sufficient facts to sustain a claim for detrimental reliance.  Accordingly, the Defendant's Motion shall be **DENIED** as to Plaintiff's detrimental reliance claim.

## III.     CONCLUSION

For the foregoing reasons, the Defendant's *Motion to Dismiss*[105] is **GRANTED IN PART and DENIED IN PART**.

The Motion is **GRANTED** on Plaintiff's breach of contract and breach of mandate claims, and they are hereby **DISMISSED WITH PREJUDICE**.

---

[103] Doc. 23-1 at 17.  The only reference that Defendant disputes in his Motion is to the third element of Barnett's detrimental reliance claim.
[104] Doc. 17 at 15 (quoting Doc. 2-2 at 7, 11).
[105] Doc. 23.

The Motion is **DENIED** as to Plaintiff's breach of fiduciary duty and detrimental reliance claims.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on June 28, 2018.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**